**Affirmed and Memorandum Opinion filed November 2, 2023.**



In The

# Fourteenth Court of Appeals

### NO. 14-23-00415-CV

## IN THE INTEREST OF A.M., A CHILD

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2021-00947J**

## MEMORANDUM  OPINION

Appellants B.D. (Mother) and K.M. (Father) appeal the trial court's final decree terminating their parental rights and appointing the Department of Family and Protective Services as sole managing conservator of their child A.M. (Alanis).[1] The trial court terminated Mother's parental rights on predicate grounds of endangerment and failure to comply with a family service plan. *See* Tex. Fam. Code § 161.001(b)(1)(E), (O). The trial court terminated Father's rights on predicate grounds of constructive abandonment and failure to comply with a family service

---

[1] Alanis is a pseudonym, which we use to protect the minor in this case. *See* Tex. R. App. P. 9.8.

plan. *See* Tex. Fam. Code § 161.001(b)(1)(N), (O). The trial court further found that termination of both parents' rights was in the child's best interest. *See* Tex. Fam. Code § 161.001(b)(2). On appeal Mother concedes legally and factually sufficient evidence supports the trial court's findings on predicate grounds but challenges the sufficiency of the evidence to support the trial court's best-interest finding. In three issues on appeal Father challenges the legal and factual sufficiency of the evidence to support the trial court's findings on predicate grounds and the best-interest finding. We affirm.

## BACKGROUND

Alanis was born March 9, 2021, at 24 weeks' gestation weighing one pound, eight ounces. Both Alanis and Mother testified positive for cocaine at Alanis's birth. Alanis required hospitalization for several months following her birth. She underwent heart surgery, and needed oxygen in addition to occupational and physical therapy. Two days later Mother told a Department investigator that she used cocaine and marijuana while pregnant. Mother had four other children who were living with their maternal grandmother (Grandmother) due to an open case with the Department. The Department investigator contacted Father who reported no knowledge of Mother's drug use while pregnant. Mother had a history with the Department dating back to early 2020 when she delivered a son who also tested positive for cocaine at birth. During the 2020 investigation Father tested positive for marijuana and cocaine. Approximately one month later Father stopped cooperating with the Department and moved to Detroit, Michigan. At that time Mother's other children were sent to Detroit to live with Grandmother.

On June 7, 2021, the Department filed its original petition for protection of the child and requested a hearing to determine whether Alanis should be removed from her parents' care and placed in the temporary managing conservatorship of the

2

Department. On July 1, 2021, the trial court held an adversary hearing and made the findings necessary to place Alanis in the Department's temporary conservatorship. *See* Tex. Fam. Code § 262.201.

On August 4, 2021, the Department completed family service plans for both parents. Mother's family service plan required her to complete the following tasks to obtain the return of Alanis:

- Maintain safe, stable, and drug-free housing for a minimum of six months.
- Provide her child with basic needs of food, clothing, and stable housing.
- Maintain stable employment for a minimum of six months.
- Attend, actively participate in, and successfully complete a parenting program.
- Maintain contact with the Department caseworker, notifying the caseworker of a phone number and/or address change within 48 hours.
- Complete a health, social, educational, and genetic history on behalf of Alanis.
- Refrain from engaging in criminal activity.
- Provide support for Alanis to the best of her ability and attend scheduled visitation with the child.
- Participate in a psychosocial assessment.
- Submit to random drug screenings.
- Participate in Narcotics Anonymous (NA) meetings.
- Participate in and successfully complete a substance abuse assessment.

Mother testified on the first day of trial, which was December 8, 2022.[2] Father

---

[2] The trial court made the necessary findings pursuant to section 263.401(b) of the Family Code, to extend the dismissal deadline to December 31, 2022.

did not appear at trial. Mother testified she had five children, none of whom lived with her at the time of trial. Mother explained that she sent the four older children to Michigan while she was dealing with her last CPS case, and had not had time to retrieve them since giving birth to Alanis. Mother's two eldest children lived with their respective fathers, and two of the younger children lived with Grandmother in Michigan. Contrary to what she told a Department investigator earlier, Mother denied using cocaine during pregnancy despite a positive test result at Alanis's birth.

Mother testified that she attended NA meetings, obtained a sponsor, completed parenting classes, and completed individual and group substance abuse therapy. Mother further testified that she complied with requests for random drug screening and bought clothes and diapers for Alanis.

Mother testified that she had not used cocaine for two years. When confronted with positive drug test results, Mother speculated that the testing site was not properly taking samples of her hair. When confronted with a positive marijuana test, Mother testified that she had a prescription for marijuana to treat Post-Traumatic Stress Disorder and anxiety. Mother worked as a home health aid for veterans. Mother had a two-bedroom apartment and provided a copy of the lease to the caseworker. Mother visited Alanis regularly and the child bonded with Mother.

Mother understood that Alanis had special medical needs, which included supplemental oxygen and leg braces. Alanis also had heart surgery at birth to correct an open valve. Mother owned two cars and would be able to take time off work to take Alanis to medical appointments. Mother testified that she has family members who work in Detroit as nurses and could help with Alanis's medical needs.

Trial resumed five months later, on May 8, 2023. Mother resumed her testimony and admitted she had been arrested for injury to a child during the intervening five months. The allegation involved violation of a court order with

regard to Mother's 12-year-old child. According to the criminal complaint, Mother was arrested for allegedly "intentionally and knowingly causing bodily injury to Z.D.C. . . . a child younger than fifteen years of age, by striking [Z.D.C.] with [her] hand." The trial court in the criminal case signed an order for pretrial supervision and bond conditions in which the court required Mother to, inter alia, have no contact with Z.D.C., refrain from using marijuana or any controlled substance, and have no "threatening, harassing or assaultive contact with the prosecution's witness(s)/the complainant(s)/the victim(s), specifically: witness [Father]."

Mother had also moved from Houston to Waco, Texas since the first day of trial. Mother leased a three-bedroom house in Waco and was employed as a nursing assistant. Mother admitted testing positive for cocaine the day Alanis was born and acknowledged that her child was born with cocaine in her system.

Mother requested that the Department perform another ICPC[3], or home study, on her mother in Michigan. Mother understood that the home study on Grandmother was denied because Grandmother's home was not suitable. Examples given were a hole in the stairs and a sofa that had dog's blood on it from a dog who had died months earlier. Mother thought Grandmother had since fixed the issues, but, according to Mother, the Department had not conducted another home study.

Nancy Viera, the primary Department caseworker, testified that Alanis was two years old at the time of trial. Alanis was placed in a non-adoptive foster home, but the Department had located an adoptive placement and Alanis was visiting with the adoptive foster parents. Alanis had been diagnosed with spastic cerebral palsy, which required leg braces, and sleep apnea, which required supplemental oxygen

---

[3] The Interstate Compact on the Placement of Children (ICPC), is a legislative agreement to facilitate interstate child welfare relations and protect the children involved in adoptions that take place across state lines.

while Alanis slept. Alanis also attended several medical appointments per month and had multiple in-home therapy appointments. Not only did the prospective adoptive parents visit Alanis regularly but they acted as the foster parents' respite caregivers. At the time of trial Alanis had spent eleven weekends with the prospective adoptive family. The prospective adoptive parents also attended medical appointments with Alanis. Viera testified that Alanis had bonded with the prospective adoptive parents.

Viera testified that Grandmother's home was not approved for several reasons. There were structural damages to the stairs in the home, not enough beds in the home, and one of the children had been sleeping on a sofa with a stain of dog's blood on it after a dog had died on the sofa "a couple of months" earlier. The Department conducted a second home study for Grandmother at Mother's request. That study was also denied primarily because Grandmother allowed Mother to have unsupervised visitation with the children despite a requirement that Mother not have unsupervised visitation. Grandmother had agreed to comply with this requirement but while one of the children—the complainant in the criminal case—was supposed to be with Grandmother, she allowed him to visit Mother. That unsupervised visitation led to the allegation of injury to a child against Mother.

As to Mother, Viera testified that Mother continued to test positive for illegal drugs, including a positive test for cocaine and marijuana on April 14, 2023, after the final hearing for termination had begun, and approximately three weeks before trial resumed. Mother attended substance abuse counseling and was successfully discharged early in the case. After Mother tested positive, she was again referred to substance abuse counseling but did not attend.

Viera testified that termination was in Alanis's best interest because the Department had found an adoptive home that was able to meet all the child's emotional, physical, and medical needs. The foster family was maintaining

consistent contact with Alanis's medical professionals and followed up to ensure her needs were met. Alanis was bonded with the foster family and was beginning to bond with the potentially adoptive family. The adoptive foster family was also keeping up with Alanis's medical professionals and was well-versed in her medical needs. Mother had not shown she made the necessary changes to her lifestyle that would not put Alanis in danger.

As to Father, Viera testified he was given a family service plan, which required him to complete the following tasks to obtain the return of Alanis:

- Maintain safe, stable, and drug-free housing for a minimum of six months.
- Demonstrate that he is capable of providing his child with basic needs of food, clothing, and stable housing.
- Maintain stable employment for a minimum of six months.
- Attend, actively participate in, and successfully complete a parenting program.
- Maintain contact with the Department caseworker, notifying the caseworker of a phone number and/or address change within 48 hours.
- Refrain from engaging in criminal activity.
- Provide support for Alanis to the best of his ability and attend scheduled visitation with the child.
- Participate in a psychosocial assessment.
- Submit to random drug screenings.
- Participate in Narcotics Anonymous (NA) meetings.
- Participate in and successfully complete a substance abuse assessment.

Father moved to Houston after Alanis was born, but moved back to Michigan before trial. Father attended visitation through August 2022, approximately eight months before trial resumed, but stopped visiting after that date. Viera had no contact

7

with Father after that date and the phone number she had for him had not been answered. Viera testified that Father had not complied with any of his services and had also not made reasonable changes to his lifestyle that would ensure Alanis's health and safety. Father had not shown he would be able to care for Alanis medically, emotionally, or physically. Father expressed to Viera that he was not willing to participate in services but wanted the child returned to Mother.

Brenda Becker, the Child Advocate volunteer, echoed the caseworker's testimony reiterating that Alanis needed to be placed in a stable, drug and smoke-free environment. Becker was aware of Mother's positive drug test results and was concerned that Mother could not care for Alanis's special needs. Becker also believed Mother was being dishonest in her denial of substance use and was failing to take her disorder and treatment seriously. Becker had spoken with Father at his last visitation with Alanis, which was eight months earlier. In Becker's opinion Father would not be a safer placement for Alanis because he had failed to participate in any services and failed to maintain contact with the child. Because Father refused to cooperate with the Department Becker had no way to ensure that Father's living environment was safe or whether Father remained drug free. Becker agreed that termination of both parents' rights was in the child's best interest.

Kamma Mangrum, a Department supervisor, testified that the Department was very concerned with Mother's housing in Waco. Mother petitioned the Texas Housing Authority to obtain a three-bedroom home at a significantly reduced monthly rent. Mother obtained this home because she listed her two younger children on the lease even though the children were not permitted to live with her at the time. According to a representative from the Texas Housing Authority with whom Mangrum spoke, the Housing Authority could evict Mother and enact a ten-year ban on further housing assistance due to Mother's inaccurate reporting.

8

The foster mother testified that Alanis had lived with her for 22 months. Alanis was diagnosed with chronic lung damage stemming from premature birth requiring her to be on a ventilator for a very long time. Alanis was also diagnosed with "spastic cerebral palsy," which caused the ligaments in her legs to be tight, requiring braces. Alanis also had sleep apnea, which caused her to stop breathing while she was sleeping, necessitating supplemental oxygen at night and during naps. Alanis was born with retinopathy and a brain bleed, both of which resolved on their own. She received heart valve surgery at birth and also had her tonsils removed, which the foster mother hoped would help with the sleep apnea. At two years old Alanis regularly saw a neurologist, pulmonologist, sleep specialist, and a pediatrician who specialized in children born prematurely. Alanis had occupational and physical therapy three days a week.

Some of the clothes Mother had given to Alanis smelled so heavily of smoke that the foster mother could not bring them in the house. The foster mother testified that Alanis could not be in a home around smoke, whether cigarettes or marijuana, because of her chronic lung damage, which will need close monitoring for the rest of Alanis's life. Smoking was also not permitted around Alanis due to her supplemental oxygen needs.

The trial court terminated Mother's parental rights on the predicate grounds of endangerment and failure to comply with a service plan. *See* Tex. Fam. Code § 161.001(b)(1)(E), (O). The trial court terminated Father's parental rights on the predicate grounds of constructive abandonment and failure to comply with a service plan. *See* Tex. Fam. Code § 161.001(b)(1)(N), (O). The trial court further found that termination of the parents' rights was in the child's best interest and appointed the Department the sole managing conservator. Both parents appealed.

ANALYSIS

Mother presents two issues for review. In her first issue, she concedes the evidence is legally and factually sufficient to support the predicate grounds for termination—endangerment and failure to comply with the court-ordered service plan. In her second issue Mother asserts the evidence is legally and factually insufficient to support the finding that termination is in the best interest of the child. Father presents three issues for review. In Father's first two issues he challenges the legal and factual sufficiency of the evidence to support the predicate grounds for termination—constructive abandonment and failure to comply with the court-ordered service plan. In Father's third issue he also asserts the evidence is legally and factually insufficient to support the finding that termination is in the best interest of the child.

## I.    Standards of Review

In a proceeding to terminate the parent-child relationship under Family Code section 161.001, the petitioner must establish by clear and convincing evidence one or more acts or omissions enumerated under subsection (1) of section 161.001(b) and that termination is in the best interest of the child under subsection (2). *See* Tex. Fam. Code § 161.001; *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *See In re of J.F.-G.*, 627 S.W.3d 304, 310 (Tex. 2021); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *See In re A.C.*, 560 S.W.3d 624, 629 (Tex. 2018); *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

Due to the severity and permanency of terminating the parent-child relationship, Texas requires clear and convincing evidence to support such an order.

*See* Tex. Fam. Code § 161.001; *In re J.F.-G.*, 627 S.W.3d at 310; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a "correspondingly searching standard of appellate review." *In re A.C.*, 560 S.W.3d at 630.

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider all evidence in the light most favorable to the challenged finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that the finding was true. *See In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). We assume that the fact finder resolved disputed facts in favor of the finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *See id.*; *In re G.M.G.*, 444 S.W.3d 46, 52 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Because of the heightened standard, we also must be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *In re D.R.A.*, 374 S.W.3d at 531.

In reviewing the factual sufficiency of the evidence under the clear-and-convincing standard, we consider and weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *In re A.C.*, 560 S.W.3d at 631; *In re J.O.A.*, 283 S.W.3d at 345. If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.O.A.*, 283 S.W.3d at 345. We give due deference to the fact finder's findings, and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108

11

(Tex. 2006).

To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground. *In re N.G.*, 577 S.W.3d at 232; *In re L.M.*, 572 S.W.3d 823, 832 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

## II.     The evidence is legally and factually sufficient to support the trial court's findings on predicate grounds for termination.

In Father's first two issues he challenges the trial court's findings on the predicate grounds of constructive abandonment and failure to follow the service plan. *See* Tex. Fam. Code § 161.001(b)(1)(N), (O). We will address Father's second issue challenging the finding under section 161.001(b)(1)(O) because it is dispositive.

Termination under section 161.001(b)(1)(O) requires a fact finder to find by clear and convincing evidence that the parent has failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child. *See* Tex. Fam. Code § 161.001(b)(1)(O). Father presents several arguments why the evidence is insufficient to support a finding that he violated this section.

Father first contends he is a "nonoffending" parent and there is no evidence Alanis was removed from him due to his abuse or neglect of Alanis. Father argues that a parent who faces termination for failing to comply with a court order under 161.001(b)(1)(O) must be the same parent from whom the child was removed. However, this court has previously held the opposite, concluding "that subsection

12

(O) does not require that the parent who failed to comply with a court order be the same parent whose abuse or neglect of the child warranted the child's removal." *In re C.M.C.*, No. 14-12-00186-CV, 2012 WL 3871359, at *4 (Tex. App.—Houston [14th Dist.] Aug. 30, 2012, pet. denied) (quoting *In re S.N.*, 287 S.W.3d 183, 188–90 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see also In re A.A.*, 670 S.W.3d 520, 529 (Tex. 2023) (rejecting argument that subsection (O) may only be applied to a parent whose wrongdoing caused the child to be removed).

In *In re A.A.*, the Supreme Court of Texas disagreed with a reading of subsection (O) that would limit its application to "a parent whose wrongdoing caused a child to be physically taken from the parent." 670 S.W.3d at 525. The court reviewed the procedures for removal under Chapter 262 of the Family Code and held that a removal did not address only physical possession but encompassed the transfer by court order of "an entire bundle of conservatorship rights" to the Department. *Id.* at 527–28. The court held that a subsection (O) finding is supported when the record demonstrates the procedures for removal under Chapter 262 have been followed. *Id.* at 528–29.

In this case, Father does not challenge the Department's procedures in removal of the child under Chapter 262. He only challenges that he did not have physical possession of Alanis when she was removed. Moreover, the record reflects that the Department followed procedures pursuant to Chapter 262 of the Family Code. Pursuant to Family Code section 262.201, the trial court held a hearing and made the findings necessary to appoint the Department temporary managing conservator. Those findings included that there was a continuing danger to the physical health or safety of the child, that for the child to remain in the home was contrary to the child's welfare, and that the Department made reasonable efforts to prevent the need for removal. The trial court's order listed Father as a respondent

and granted the Department the right to physical possession of the child and the duty of care, control, and protection of the child. *See* Tex. Fam. Code § 153.371. The trial court's orders following the adversary hearing "confirm that the removal order legally removed the [child] from both Mother and Father, regardless of who had legal or physical possession of the [child] at the time." *In re A.A.*, 670 S.W.3d at 529. Because the record demonstrates the procedures for removal under Chapter 262 were followed, the court's subsection (O) finding is supported by sufficient evidence. *See id*. at 528–29.

Next Father asserts that he was unable to fully comply with the service plan but made a good faith effort to comply and the failure is not attributable to Father. Father's contention is an invocation of the statutory defense to termination under subsection (O), codified in section 161.001(d). *See* Tex. Fam. Code § 161.001(d). The Family Code establishes a single affirmative defense to termination for failure to comply with a court order:

> A court may not order termination under Subsection (b)(1)(O) based on the failure by the parent to comply with a specific provision of a court order if a parent proves by a preponderance of evidence that:
>
> (1) the parent was unable to comply with specific provisions of the court order; and
>
> (2) the parent made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent.

Tex. Fam. Code § 161.001(d).

Section 161.001(d) places the burden on the parent to prove by a preponderance of the evidence that he was unable to comply with the court-ordered service plan, he made a good faith effort to comply with the order, and his failure to comply is not attributable to any fault of his own. *In re L.E.R.*, 650 S.W.3d 771, 788 (Tex. App.—Houston [14th Dist.] 2022, no pet.). We reject Father's reliance on this

defense because he did not assert the defense in his pleadings or during trial and provided no evidence to support it. *See id.* Thus, the defense cannot be raised for the first time on appeal. *See In re D.L.W.*, No. 14-22-00654-CV, 2023 WL 1460548, at *5 (Tex. App.—Houston [14th Dist.] Feb. 2, 2023, no pet.) (mem. op.).

The record before us supports the trial court's finding in its final termination decree that Father failed to raise a statutory defense to termination based on failure to comply with a court order, and "even if presented" it was not proved by a preponderance of the evidence. Father did not raise the defense in the trial court, nor did he satisfy his burden of proof and establish the applicability of the defense.

Father contends for the first time on appeal that he was unable to comply with the family service plan because he lived in another state, the Department did not refer him to services in the Detroit area, and the Department made no attempt to view his home to assess its appropriateness. But Father offered no evidence at trial that he was unable to comply with the specific provisions of the court order, that he made a good faith effort to comply with the order, and that his failure to comply with it is not attributable to his fault. In fact, Father did not appear at trial. The record reflects that Father was made aware of his service plan but did not comply with the plan.

The evidence, considered altogether, supports the trial court's findings that Father failed to comply with the service plan and Father failed to raise and prove the statutory defense. We conclude that under these circumstances, the fact finder could have formed a firm belief or conviction that its finding under subsection (O) was true. *See In re L.E.R.*, 650 S.W.3d at 788. Considered in the light most favorable to the trial court's finding, the evidence is legally sufficient to support the trial court's determination that termination of Father's parental rights was justified under section 161.001(b)(1)(O). Further, in view of the entire record, we conclude the evidence to

15

the contrary is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was warranted under section 161.001(b)(1)(O). Accordingly, we conclude the evidence is legally and factually sufficient to support the subsection (O) finding.

Having concluded the evidence is legally and factually sufficient to support the trial court's finding under subsection (O), we need not review the sufficiency of the evidence to support the subsection (N) finding. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."). We overrule Father's first and second issues on appeal.

Mother does not contest the trial court's findings of endangerment and failure to follow the service plan pursuant to section 161.001(b)(1)(E) and (O). We therefore proceed to the parents' challenges to the trial court's best-interest finding.

## III. Legally and factually sufficient evidence supports the trial court's finding that termination of the parents' rights was in the child's best interest.

The best interest inquiry is child-centered and focuses on the child's well-being, safety, and development. *In re A.C.*, 560 S.W.3d at 631. The trier of fact may consider several factors to determine the child's best interest, including: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse

16

for the parents' acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re E.R.W.*, 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also* Tex. Fam. Code § 263.307(b) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment).

Courts apply a strong presumption that the best interest of the child is served by keeping the child with her natural parents, and it is the Department's burden to rebut that presumption. *In re D.R.A.*, 374 S.W.3d at 531. Prompt and permanent placement in a safe environment also is presumed to be in the child's best interest. Tex. Fam. Code § 263.307(a). A finding in support of best interest does not require proof of any unique set of factors, nor does it limit proof to any specific factors. *See Holley*, 544 S.W.2d at 371–72. Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 28. And a fact finder may measure a parent's future conduct by their past conduct in determining whether termination of parental rights is in the child's best interest. *In re L.G.*, No. 14-22-00335-CV, 2022 WL 11572541, at *11 (Tex. App.—Houston [14th Dist.] Oct. 20, 2022, no pet.) (mem. op.).

On appeal Father's argument challenging the trial court's best-interest finding is that there was no evidence he would be a danger to Alanis if named possessory conservator. Father does not specifically address the *Holley* factors or statutory factors in his brief. We review the *Holley* factors in light of the evidence at trial and address the parents' challenges with regard to those factors.

## A.     The desires of the child

Alanis was too young to express her desire at the time of trial. When children are too young to express their desires, the fact finder may consider that the children

have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). In this case, the record reflects that Alanis was well-cared for by the foster family, especially considering her extensive medical needs. Because Alanis was removed when she was less than three months old she spent minimal time with either parent.

To be sure, the record reflects Mother had a bond with her child and Father occasionally visited the child. The record further reflects that Alanis has extensive medical needs and will require a lifetime of monitoring to keep her healthy. Mother continued to use illegal drugs during the pendency of the case and did not demonstrate an ability to place the needs of Alanis over her own desires. Because Father refused to cooperate with the Department, the trial court had no way to know whether Father has maintained sobriety or has the ability to care for Alanis. While a child's love for her parent is a very important consideration in determining the best interest of the child, it cannot override or outweigh evidence of danger to the child. *See In re J.A.A.A.*, No. 14-23-00119-CV, 2023 WL 4503963, at *8 (Tex. App.—Houston [14th Dist.] July 13, 2023, no pet.) (mem. op.); *In re F.M.E.A.F.*, 572 S.W.3d 716, 732 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

### B. The present and future physical and emotional needs of the child; the present and future physical and emotional danger to the child

Mother asserts that she has proper medical training to address Alanis's ongoing medical needs, but acknowledges that her continued drug use weighs in favor of the Department. We agree. The record reflects that Mother continued to use illegal drugs after Alanis came into care and during the pendency of the case. Mother disregarded the trial court's order that she not receive unsupervised visitation with her children and was charged with injury to a child during the pendency of this case.

18

Mother argues on appeal that her objective is to be awarded possessory conservatorship to allow her additional time to address her addiction. Although the right to parent is one of constitutional dimension, the Department is not required to show that other alternatives, short of termination, such as possessory conservatorship, were not available to protect the children. *See In re N.A.*, No. 02-13-00345-CV, 2014 WL 814195, at *7 (Tex. App.—Fort Worth Feb. 28, 2014, no pet.) (mem. op.).

C. **Parental abilities of the individuals seeking custody; programs available to assist those individuals seeking custody to promote the best interest of the child; plans for the child by the parties seeking custody; stability of the home or proposed placement; acts or omissions that indicate the parent-child relationship is not appropriate**

These related factors compare the Department's plans and proposed placement of the children with the plans and home of the parents seeking to avoid termination of the parent-child relationship. *See In re D.R.A.*, 374 S.W.3d at 535.

Mother does not challenge the foster family's ability to care for Alanis. Mother asserts that because Alanis has not been placed in the adoptive family's home, whether they have the ability to care for Alanis is "speculative at best." To the contrary, the record reflects that at the time of trial the adoptive foster family had spent at least eleven weekends with Alanis, was instructed in how to care for her medical needs, had acquired necessary equipment to care for those needs, and had attended medical appointments with Alanis.

Placement plans and adoption are relevant but "the lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor." *In re L.D.T.P.*, No. 14-22-00815-CV, 2023 WL 3115756, at *9 (Tex. App.—Houston [14th Dist.] Apr. 27, 2023, no pet.) (mem. op.) (quoting *In re C.H.*, 89 S.W.3d at 28). The issue is "whether, on the entire record, a factfinder could

19

reasonably form a firm conviction or belief that termination of the parent's rights would be in the child's best interest even if the agency is unable to identify with precision the child's future home environment." *Id.*

Mother further argues that Alanis should be placed with Grandmother. Not only is Grandmother's home not suitable for young children, the Department has reason to believe that Grandmother will return Alanis to Mother as soon as she is granted conservatorship. In fact, Mother's arrest during the pendency of this case for injury to a child was a result of Grandmother permitting at least one of the children to stay with Mother unsupervised.

As to housing Mother argues she "has consistently maintained suitable housing and employment throughout the pendency of this case." To be sure, the record reflects Mother has maintained stable employment. As to housing, the record reflects Mother defrauded the Texas Housing Authority and was at risk not only of losing her housing but being banned from publicly-assisted housing for up to ten years. The record reflects Mother's housing situation is not stable.

### D. Parent's acts or omissions that may indicate that the existing parent-child relationship is an improper one and any excuses for the parent's acts or omissions

Mother asserts she complied with most of the services on her family service plan and is working on her sobriety with the help of a sponsor. However, Mother's drug test results, while decreasing at the beginning of the case, increased as the case continued.

The trial court may reasonably decide a parent's changes before trial are too late to impact the best-interest decision. *See In re J.O.A.*, 283 S.W.3d at 346 ("While the recent improvements made by [the parent] are significant, evidence of improved conduct, especially of short-duration, does not conclusively negate the probative

value of a long history of drug use and irresponsible choices."). Although a reasonable fact finder could look at Mother's attempts at sobriety and decide they justified the risk of keeping her as a parent, we cannot say the trial court acted unreasonably in finding the child's best interest lay elsewhere. *See In re M.G.D.*, 108 S.W.3d 508, 514 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). It is not our role to reweigh the evidence on appeal, and we may not substitute our judgment of the child's best interest for the considered judgment of the fact finder. *See id*. at 531 (Frost, J., concurring).

Balancing the above factors and viewing the evidence in the light most favorable to the parents, we conclude the evidence is legally sufficient to support the trial court's finding that termination is in the best interest of the child. Further, in view of the entire record, we conclude the evidence to the contrary is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was in the best interest of the child. Accordingly, we conclude the evidence is legally and factually sufficient to support the trial court's finding of best interest. We overrule Mother's second issue and Father's third issue.

**CONCLUSION**

Having overruled both parents' issues on appeal we affirm the trial court's final order of termination.

/s/ Jerry Zimmerer
Justice

Panel consists of Justices Wise, Zimmerer, and Poissant.